No. 15,107.

TALLMAN *v.* SMITH ET AL.
(148 P. [2d] 581)

Decided April 10, 1944.

Mr. Richard E. Conour, Elizabeth A. Conour, for plaintiff in error.

Messrs. Goss & Hutchinson, for defendants in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS action was instituted by plaintiff in error, plaintiff below, to whom we hereinafter refer as Mrs. Tallman, asking for a declaratory judgment, determining her rights under a contract which she had entered into with her nephew-in-law, defendant in error Smith. The contract involved the sale of an interest in a hardware and implement store in the town of Center, which store Mrs. Tallman had owned and operated since the death of her husband in 1918. The other defendant in error, Lewis, is a party by virtue of his having purchased an interest in the property on January 1, 1932. The trial court ruled adversely to Mrs. Tallman and she seeks reversal on a writ of error.

The contract recites that Mrs. Tallman is party of the first part and Sam Smith is party of the second part; that Mrs. Tallman is the owner of the business; that she wishes to retire and "desires to eventually sell and dispose of the whole of said property." The parties then agree in substance: 1. That the present value is $32,345.00, and that the said net value of the bills and accounts receivable amount to $9,957.54. 2. That Mrs. Tallman agrees to sell, and does sell, to Sam Smith an undivided one-fourth interest for $8,086.25 which consideration Smith agrees to pay "in manner and form" in substance as follows: One note for $5,596.86 payable on or before five years from date with interest payable annually at seven per cent, and another note for $2,489.38 on the same terms. 3. That Mrs. Tallman agrees to sell to the second party a further two-fourths interest on the terms that when Smith has paid the full amount of the two notes for the first one-fourth interest, together with the interest thereon, then the value of the business "shall be ascertained by inventory," and Smith shall pay Mrs. Tallman one-fourth of such ascertained

value by giving her a note for that amount payable on or before four years after date thereof, with interest at seven per cent per annum; that when that note is paid Mrs. Tallman agrees to sell to Smith a third one-fourth interest in like manner for a note to mature in three years from date thereof, which Smith "shall" give Mrs. Tallman. 4. That Smith agrees to take charge of the business at once and manage the same, receiving for such services a salary of $150.00 a month, payable from the proceeds of the business. 5. That the remaining one-fourth interest shall belong to Smith when he shall have paid for the three-fourths agreed to be purchased by him, without further payment for the last one-fourth interest; that if Smith dies or refuses to continue operations under the contract before he pays the full price for the three-fourths interest, he shall own that part of the last quarter interest in proportion to the amount he has paid on the other three-fourths, provided that from May 19, 1927, Smith shall receive the income "from said one-fourth interest in the business." 6. If the parties can and do sell the business, Mrs. Tallman is to receive the unpaid portion of the purchase price of the three-fourths interest and the remainder of the selling price shall belong to Smith. In the event of such sale, Mrs. Tallman's interest to "be determined by inventory," and Smith may sell that interest at any time for the "inventory price." 7. The goods to be insured against loss by fire. 8. Mrs. Tallman agrees to lease an adjoining building to Smith for the life of the contract and Smith shall "have an option" to lease for another five year period. 9. Smith agrees to "cause an inventory of the stock to be taken" each year and give Mrs. Tallman a complete statement showing the condition of the business at the end of each year. 10. Smith may decrease the stock by sale thereof, and dividends from such sale and of net profits may be made by mutual agreement. A supplement to the agreement permitted purchase by Smith of some additional lots for partnership purposes for "Fifty

dollars, for each one-fourth interest and paid for as he pays for additional interests in the business," and finally the contract of sale between Smith and Lewis (to whom Smith sold a one-fourth interest January 1, 1932) for $7,690 which Mrs. Tallman approved.

The record discloses that the parties proceeded under the contract without serious question or dispute for thirteen years. Smith took immediate charge in 1927 and apparently did a good job of running the business. Mrs. Tallman admits she "retired from the business." An inventory was taken and statements showing the condition of the business were furnished to Mrs. Tallman at the beginning of each year. Nothing in the record indicates that she ever objected to the manner in which the inventory was taken or to the statements that were furnished her. They were used by her and the partnership year after year as a basis for the computation of the respective income taxes.

As to the first quarter-interest which Smith purchased in 1927, a credit was allowed him of some $1,800. As to this adjustment Smith testified as follows: "Q. What was the occasion for that credit? A. Well as Mrs. Tallman said, we just kind of stepped it off when I went in there [May 19, 1927], and after the year's business was finished and invoiced and we added it all up, I saw that we had made a mistake some way, so I called her attention to it then and we estimated how much the business had actually made in 1927, and we proportioned the amount of profits up to the time I went in there and we allowed that and arrived at the net value of the business that way, so I called her attention to it and she gave me a credit on the notes."

As to the amount given for the second quarter-interest and the method used in ascertaining it, Mrs. Tallman testified as follows: "Q. Mrs. Tallman, when Smith gave you these notes in 1930 in January for the second one-fourth interest in the business, that amount was arrived at from a statement similar to the ones that had

been given you each year which showed a statement of the assets and liabilities of the business? A. Yes sir. Q. It was similar to the one which he gave you in 1940 for the 1939 business, wasn't it, a statement of the assets and liabilities? A. Yes sir. Q. At that time he had taken an inventory and had made out a statement which showed what the business was worth, and gave you two notes which aggregated one-fourth of the net value of the business? A. Yes sir."

After Lewis became a partner in 1932 he received one-fourth of the money divided as profits; Mrs. Tallman received one-fourth, and Smith two-fourths. This method of division was followed until December 7, 1939, and Mrs. Tallman was always present when these divisions were made, which indicates that Smith's interest in the profits was in each instance determined as he gave the notes for the next quarter interest and not from the time the notes were paid.

December 7, 1939, Smith paid Mrs. Tallman the balance of the purchase price for the second one-fourth interest after stating to her that when he gave her the notes for the purchase price of the third one-fourth interest in the business she would have no further interest therein.

January 3, 1940, Mrs. Tallman advised Smith that his option to purchase the third one-fourth interest and the gift of the fourth had been revoked and cancelled.

January 11, 1940, Smith wrote Mrs. Tallman that he had completed the inventory for 1939, and inclosed a statement of the bonuses for that year, and also, two notes in payment for the third quarter interest in the business. These notes were similar in form and terms to the ones he had previously given and the due date was, on or before December 7, 1942. He also stated that if there were any errors in the inventory, he would adjust the amounts in the notes accordingly.

Since nowhere in the contract does it appear that time is of the essence, it is not important that Smith did not

tender his last notes in payment of the third quarter interest on January 2, 1940. He did tender them a few days later, the delay being due to his illness of which Mrs. Tallman had knowledge.

Mrs. Tallman declined to accept this offer and, electing to stand on her alleged right to cancel the contract, returned the notes, and a short time later instituted this action.

As already noted, the trial court found the issues in favor of Smith and Lewis, and specifically found that the contract was one for sale and purchase and not an option; that the partnership relations existing between the parties terminated January 11, 1940, as of December 7, 1939; that Smith since that time became the owner of an undivided three-fourths interest of the business, and entitled to all the profits therefrom, and ordered Mrs. Tallman to accept the notes tendered by Smith on January 11, 1940, and to convey by deed all her right, title and interest to the property.

Counsel for Mrs. Tallman summarize their arguments for reversal substantially as follows: 1. The contract is an option, lacking in consideration and mutuality and therefore plaintiff could revoke at any time. 2. The last quarter interest, and the profits therefrom, was a gift and hence could be revoked at any time, and was so revoked prior to the time of vesting. 3. The "last fourth interest * * * does not vest until notes representing the value of the third interest have been paid in full." 4. Alleged construction of the contract by the parties not supported by the evidence. 5. Contract must fail because the price of the third interest was not agreed upon. 6. Judgment of the trial court is unintelligible in holding "the contract to be in full force and effect and yet gave judgment that it had been performed and that she had no rights thereunder."

1. At the outset it will be noted that the word "option" appears only once in the entire agreement and that is in relation to an extension of Smith's lease on the ad-

224

joining building. No where is it mentioned in the testimony of Mrs. Tallman, while in the contract she says she wants to retire and sell the "whole of said property." In paragraph 2 of the contract, it is recited that Mrs. Tallman agrees to sell one-fourth interest and Smith agrees to buy it. Paragraph 3 of the contract contains the statement that Mrs. Tallman agrees to sell a further two-fourths interest, and Smith agrees to buy it, when he has finished paying for the first quarter interest, giving his notes therefor when "the value of said business shall be ascertained by inventory." Counsel for Mrs. Tallman concede: "If this be a contract of purchase and sale we might agree that a mutual agreement to extend the time of performance made prior to default would be binding on Mrs. Tallman." They then argue that Smith breached his contract by defaulting on the payment of his notes which were due January 1, 1934. These notes were extended by written indorsement on January 2, 1935.

As to consideration for the extension, we note that it was in the midst of the then existing business depression, and all the parties concerned, according to the statement, were turning back the profits into the business to save it, and Smith was working at a reduced salary. Whatever right Mrs. Tallman had to revoke during 1934 she waived by the extension on January 2, 1935. Having waived the breach "the time fixed in it for it to be performed may be extended without any other consideration than the mutual consent of the contracting persons. It has been said that the consideration of the original contract extends over and supports it as extended by a new agreement enlarging the time for it to be performed." 12 Am. Jur., 994, §415. Counsel for Mrs. Tallman—aside from the waiver which we think is conclusively shown — concede this to be the law. With the extension given, we think the whole contract was revived and remained one for purchase and sale of "the whole of said property."

 Assuming the contract was an option, it does not follow that it must fail for the alleged lack of mutuality caused by Smith's right to terminate it under the terms of paragraph 5 of the contract. Consideration being shown, an option "cannot be withdrawn before its expiration [i.e. Jan. 2, 1940], and the question of mutuality, either of obligation or remedy, is not involved [authorities]. Nor is mutuality of obligation essential where there is any other consideration for the contract." *Stanton v. Union Oil Co.*, 111 Colo. 414, 142 P. (2d) 285.

 To say that under paragraph five, Smith is given the right to quit "at his arbitrary discretion" and, because of that, Mrs. Tallman can now cancel the contract, would be an unreasonable construction and certainly contrary to the interpretation thereof by these parties over the period of years that the contract has been in force. "A contract will be given that construction which will make it valid and binding, instead of a construction which would make it void and unenforceable." *American Sugar Refining Co. v. Newman Grocery*, 284 Fed. 835. "If the contract by its terms reserves to one of the parties the right to terminate it for some specified cause or upon the happening of some certain event and not at his arbitrary discretion, such provision does not prevent such promise from amounting to a consideration; and, accordingly, such contract is valid." Page on Contracts, vol. 1, p. 973.

 2. We cannot agree with counsel for Mrs. Tallman that the last quarter-interest and the profits therefrom was a gift. They say it is a question of law. Ordinarily that would be true, but in this case it became a question of fact. Smith contends that the contract was one of purchase and sale of the entire business for seventy-five cents on the dollar. Testimony was introduced on the question and the trial court found it was not a gift. The fourth-interest and profits therefrom was a part of the over-all consideration and hence not revocable at pleasure.

■ 3. "The last quarter-interest" under the terms of the contract vested in Smith when he tendered the notes for the third quarter interest, assuming, as the trial court did, that the giving of the notes constituted payment for the three-fourths interest. This might not technically be within the meaning of the words "shall have fully paid for the three-fourths," but it is stated in paragraph 3 that payment is made by giving the notes, and if there was error, it was error without prejudice because paragraph 5 specifically provides that the profits for the last one-fourth interest vested in Smith on May 19, 1927, and the parties accepted that construction of the contract all through the years.

■ 4. Counsel say that the alleged construction of the contract is not supported by the evidence. They say that Mrs. Tallman did not know what was going on, "that any course of dealings purporting to be a practical construction of the contract has to be consistently and clearly followed by both parties with full knowledge of the whole situation." This is not a full statement of the law. To it must be added that the party was in some way excluded from the means of knowledge. This record shows that Mrs. Tallman was of sound mind; that she had a key to the store at all times; that the books of the store were open to her; that she saw the ledger sheets; that she was present when the distribution of profits was had; that she received the annual statements of the business, and that there is no suggestion of fraud or deceit in this case. We think the evidence clearly shows what transpired, and that Mrs. Tallman had knowledge of it.

■ 5. It is urged that the contract must fail because no price was ever agreed upon for the third share. The fact that no price was fixed in the contract did not effect its validity, because the method was set forth whereby the price could be readily ascertained, and as has been noted, there was no difficulty encountered in ascertaining the price on the first two quarter-interests, and the

price of the third quarter was to be fixed in the same manner, i.e., when the notes for the preceding quarter-interest had been paid, "then the value of said business shall be ascertained by inventory." Counsel for Mrs. Tallman argue that this language means an inventory that Mrs. Tallman agreed to. That is not the language of the contract. Testimony in regard to the inventory taken in December, 1939, is in part: "Q. Isn't it a fact that in the inventory of merchandise, in making up this invoice, the item of $26,962.13 contains a number of items which were never extended or included in the total? A. Nothing except a few obsolete parts in the repair department."

Counsel argue that no price was agreed upon "but was to be determined by the future agreement of the parties." The contention is not justified. The agreement as to how the price was to be fixed was reached on May 19, 1927, and therefore the cases cited by counsel on the theory of a price to be agreed upon in the future are not applicable. Mrs. Tallman knew exactly how the operations were conducted. The record shows that several years before the contract was signed, Mrs. Tallman had Smith come to Center and set up a book-keeping system for the business which she herself used prior to 1927, and knowing that that system was in use at that time, it is reasonable to believe that the annual statement-inventory method would be the one she would adopt for the determination of the price of the business in any given year.

The attempt on the part of counsel to question certain items in the inventory is not persuasive. They rely on the case of Cramer v. Oppenstein, 16 Colo. 495, 27 Pac. 713, as indicating a distinction between "inventory" and "invoice," and argue therefrom that the inventory in this case was useless in attempting to fix the value. However, the contract says "inventory" and these parties never had any misunderstanding about what the word meant, but even assuming "invoices" should have been

used, the record, as indicated above, shows that invoices were used as a basis for the inventory, i.e., "after the year's business was finished and invoiced," and one of her own attorneys used the words, "in making up this invoice." Whatever the word used, the information Mrs. Tallman needed was there, and she had the continual privilege of making inquiry as to any matter, regarding which she desired to be informed.

Nowhere in the record is there any suggestion that the price tendered by Smith and approved by the trial court is unfair. The price tendered for the third quarter-interest was $9,800.99. The price paid for the first quarter was $6,199.47, a difference of $3,601.52. It is true that this was due to the appreciation in the value of the business, which we think is honestly reflected in the annual statements, and we think there is no question that Smith not only saved the business during the depression, but that he brought it to its present worth.

6. In asserting that the judgment is unintelligible, counsel raise a number of possible questions which we think it unnecessary to answer. We believe they will not arise. If they do, the courts will decide them if and when they are called upon to do so. Counsel complain because the court in effect decreed specific performance. We think they have no ground for complaint as to that part of the decree, because they pray for specific performance of Mrs. Tallman's letter of cancellation and revocation. In view of what we already have stated relative to the Smith notes being payment in full, according to the contract, we perceive no error in the court's action in ordering conveyance of the real estate to Smith. We are confident that the parties will find no difficulty in carrying out the simple instructions to close this matter. All Mrs. Tallman has to do is to accept the tendered notes and execute the deed pursuant to the court decree. Having complied with the order she will have received over $40,000 for a business that was valued at less than $28,000 in 1927 and from which

she wanted to retire at that time. We believe the effect of the trial court's decree is to do full justice between these parties in conformity with their intentions and in accordance with their own interpretation of their contract. *Thompson v. Sweet,* 91 Colo. 552, 17 P. (2d) 308; *National Sales Corporation v. Dennis,* 93 Colo. 536, 27 P. (2d) 499.

Judgment affirmed.

MR. JUSTICE KNOUS and MR. JUSTICE HILLIARD dissent.