561 P.2d 342 (1976)
M. R. MANSFIELD REALTY, INC., a Colorado Corporation, Plaintiff-Appellant,
v.
William S. SUNSHINE and Blanche Z. Sunshine, Defendants-Appellees.
No. 75-445.
Colorado Court of Appeals, Div. III.
November 4, 1976.
Rehearing Denied December 23, 1976.
Certiorari Granted March 14, 1977.
*343 Caskins, Hertzman & Chanzit, Richard M. Chanzit, Denver, for plaintiff-appellant.
Sterling, Simon & Rubner, Roger L. Simon, Denver, for defendants-appellees.
Selected for Official Publication.
STERNBERG, Judge.
Plaintiff M. R. Mansfield Realty, Inc. appeals the judgment of the trial court, sitting without a jury, that the defendants landowners were not liable for payment of a commission. We reverse.
The defendants Sunshines, owners of a tract of unimproved urban land, signed an exclusive listing agreement with plaintiff contemplating leasing the property. The listing agreement specified that Mansfield would receive a commission equal to 6% of the total lease payments. Mansfield located a proposed lessee, James, who wanted to construct a franchised fast-food restaurant on the land. Following negotiations, on February 7, 1972, James and the Sunshines signed a lease, drafted by the Sunshines' lawyer, providing for a 20 year term with a ground rent of $6,000 per year plus 12% of the cost of improvements to be built by the Sunshines.
Thereafter, James obtained his restaurant franchise, paid a $7,500 franchise fee and received the franchisor's plans, specifications and bid documents for use in construction. These documents were submitted to the Sunshines. James obtained two bids for construction of the restaurant, one of which was acceptable to the Sunshines.
The lease required a "guaranty" in the following language:
"It is understood and agreed by and between the parties hereto that this lease is conditioned upon the terms and performance of said terms being guaranteed by the Small Business Administration, which guaranty Tenant shall obtain, and Tenant shall submit adequate proof to Lessor of such guaranty."
Interpretation of the language and meaning of this "guaranty" clause is critical to plaintiff's claim for a commission. Generally, findings of a trial court are binding on review; however, that rule has no application where, as here, we are interpreting the language of a document. Sentinel Acceptance Corp. v. Colgate, 162 Colo. 64, 424 P.2d 380 (1967). Thus, interpretation of the lease provision is one of law, and we are not bound by the lower court's determination in this regard. A Small Business Administration (SBA) "guaranty," under the practices of that agency, is in effect a misnomer: Actually, the guaranty is made by a private insurance company and is reinsured by the SBA. Also, by law, an SBA guaranty for a business of this type may not be given for 100%. 15 U.S.C. § 636(a)(3). All negotiations had been for SBA reinsurance of a private insurance company's guaranty in the amount of 80% and such was lessee's interpretation of the quoted paragraph of the lease.
On the other hand, the Sunshines, while not contesting the reinsurance aspect, do assert that the clause required a 100% guaranty. One week after learning that James' proposed guaranty would be for 80%, the Sunshines terminated the lease because although James was close to obtaining an 80% guaranty, he had failed to procure a 100% guaranty. At that time, James, having already spent $12,000 was anxious to go ahead with the lease, and was attempting *344 to procure an additional 20% guaranty from the franchisor. No additional time was given James to procure an additional 20% guaranty.
Mansfield brought this suit alleging that it had earned its commission since it had obtained a lessee ready, willing, and able to perform. In ruling for the defendant the trial court found, with respect to the SBA guaranty, that "such guaranty was not obtained nor was it available." (This must have been a reference to the 100% guaranty, that being the one that was not available).
If the actions of the lessor, or his neglect, defeated consummation of this lease, he is not to be relieved of his liability to pay the broker. See Dickey v. Waggoner, 108 Colo. 197, 114 P.2d 1097 (1941); and § 12-61-201, C.R.S.1973.
Thus, if the actions of the Sunshines in terminating the lease were the cause for its not being consummated, the broker is entitled to its commission. We conclude that the only reasonable interpretation of the lease provision is that it referred to an 80% guaranty, that therefore the Sunshines' termination due to failure to obtain a 100% guaranty was improper, and thus the broker is entitled to its commission.
Generally, where there is mutual mistake as to the meaning of a material contract term, the document is thereby rendered void, Carpenter v. Hill, 131 Colo. 553, 283 P.2d 963 (1955); nonetheless an exception to that rule occurs:
"When two parties have reduced their agreement to writing, using the words that each of them consciously intends to use, it is often not a sufficient ground for declaring that the agreement is void or subject to cancellation by the court that the parties subsequently gave different meanings to the agreed language, or even that they gave different meanings thereto at the time that the agreement was expressed. If the meaning that either one of them gave to the words was the only reasonable one under the existing circumstances, the other party is bound by that meaning and there is a contract accordingly." (emphasis supplied) 1 A. Corbin, Contracts § 104.
To similar effect, see 1 S. Williston, Contracts § 94 (W. Jaeger 3d ed.).
In concluding, as we do, that the only reasonable interpretation of the contract was that the lessee obtain an 80% guaranty, we note first that the document in question was drafted by the Sunshines' attorney and thus it must be construed most strictly against them. Christmas v. Cooley, 158 Colo. 297, 406 P.2d 333 (1965); and Peoples Bank & Trust Co. v. Warner, 35 Colo.App. 434, 535 P.2d 1132 (1975).
Notwithstanding the fact that the Sunshines may have intended the clause to mean a 100% guaranty, since they incorporated the reference to the SBA and since guarantees provided by that agency are really reinsurance of a private insurance company's guaranty, and since a 100% guaranty is legally unobtainable, it is only reasonable to interpret that clause as requiring an 80% guaranty. 4 S. Williston, Contracts § 609 (W. Jaeger 3d ed.) states:
"`[I]t is well settled that parties who contract on a subject-matter concerning which known usages prevail, incorporate such usages by implication into the agreements if nothing is said to the contrary.'"
Additionally, a contract is to be given that construction which will make it valid and binding, Tallman v. Smith, 112 Colo. 217, 148 P.2d 581 (1944), and courts should effectuate and not destroy contracts. Jewel Tea Co. v. Watkins, 26 Colo.App. 494, 145 P. 719 (1915). Also, an interpretation which makes the contract or agreement fair and reasonable is preferred to one which leads to a harsh or unreasonable result. Hutchinson v. Elder, 140 Colo. 379, 344 P.2d 1090 (1959).
Here, to construe the contract as requiring a 100% guaranty by the SBA, when it would be impossible to comply with such requirement, would effectively preclude the lessee from ever satisfying the condition and thus would give to the lessors the option of terminating the lease on arbitrary or capricious grounds.
*345 Accordingly, since the Sunshines' termination of the lease was unjustified, Mansfield fulfilled the requirements of the listing contract and is entitled to its commission therefor.
Judgment reversed and cause remanded with directions to enter judgment for plaintiff for the full amount of its commission as provided in the listing agreement.
BERMAN and KELLY, JJ., concur.