**COLORADO INVESTMENT SERVICES, INC., a Colorado corporation, Plaintiff-Appellant and Cross-Appellee,**

v.

**Dennis K. HAGER, Paul Sherrod, and Vail Run Realty, Inc., a Colorado corporation, Defendants-Appellees and Cross-Appellants.**

**No. 81CA0773.**

Colorado Court of Appeals, Div. II.

June 14, 1984.

---

Bradley, Campbell & Carney, P.C., Victor F. Boog, Golden, for plaintiff-appellant and cross-appellee.

Pendleton & Sabian, P.C., Alan C. Friedberg, Denver, for defendants-appellees and cross-appellants.

BERMAN, Judge.

Plaintiff, Colorado Investment Services, Inc. (CIS) appeals: (1) the trial court's finding of plaintiff's breach of its lease with defendants of condominium unit 7–E at Vail Mountain Resort Community and its award to defendants of $100 nominal damages for that alleged breach, and (2) the trial court's award to defendants of $5,300 for real estate commissions for plaintiff's alleged failure to proceed with an agreement regarding the time share estates in condominium unit # 221 of the same resort. Defendants, Dennis K. Hager, Paul Sherrod, and Vail Run Realty, Inc. (collectively, VRR) cross-appeal: (1) the trial court's granting of possession of condominium unit 7–E to CIS, (2) the trial court's awarding of only $100 in damages for CIS's alleged breach, and (3) the trial court's denial of defendants' motion for new trial pursuant to C.R.C.P. 59(a)(1). We affirm in part and reverse in part.

On March 22, 1978, CIS executed a lease with VRR for commercial condominium unit 7–E of the Vail Run Resort Community located in Vail, Colorado. The term of the one-year lease was to run from July 1, 1978, through June 30, 1979. Regarding VRR's option to extend the term of the lease, the agreement provided as follows:

"If at the end of the Basic Term of the Lease, Tenant is not in default in any of its obligations under this Lease, Tenant shall have the right to extend the term of this Lease for an additional five (5) year term at the rental provided for in paragraph 3 hereof, payable in like manner and subject to all the remaining terms contained in this Lease. Tenant shall exercise its first option *by giving Landlord notice of its intention to do so at least one (1) year prior to the expiration of the original term.*" (emphasis added)

The lease further provided:

"This Lease along with any exhibits and attachments hereto constitutes the entire agreement between Landlord and Tenant relative to the Leased Premises and *this Lease* and the exhibits and attachments

*may be altered, amended or revoked only by an instrument in writing signed by both Landlord and Tenant.*" (emphasis added)

There was some conflicting evidence at trial suggesting that, following the execution of the lease, CIS *orally* modified the lease with VRR to allow VRR to give notice exercising the option at any reasonable time prior to the expiration of the original term of the lease. However, any such oral modification was not reduced to writing. VRR did not give written notice on July 1, 1978, of their intent to extend the lease beyond the base period and in fact did not give such notice until March 2, 1979.

In July 1979, CIS commenced this action seeking a judgment for possession of the leased premises. VRR counterclaimed for $4,000 in damages for an alleged breach of the lease for removal of a sign by the lessor, and for $5,300 in real estate commissions for the sale of time-share weeks 32, 33, and 51, 52 and 1 of unit # 221 of the Vail Run Resort Community by VRR for CIS and for which VRR allegedly produced ready, willing, and able buyers.

With respect to the issue of the sign, the lease provided as follows:

"Tenant shall not erect or install any exterior signs or window or door signs, advertising media or window or door lettering or placards without Landlord's prior written consent."

However, the lease further provided:

"Except as limited elsewhere in this Lease, wherever in this Lease, Landlord or Tenant is required to give its consent or approval to any action on the part of the other, such consent or approval shall not be unreasonably withheld. In the event of failure to give any such consent, the other party shall be entitled to specific performance at law and shall have such other remedies as are reserved to it under this Lease but in no event shall Landlord or Tenant be responsible in monetary damages for failure to give consent unless said failure is withheld maliciously or in bad faith."

VRR had placed a sign for Vail Run Realty on the leased premises. After receiving notification that the sign was in breach of the lease, VRR removed the sign and, on October 22, 1978, requested permission from CIS to reinstall the sign. CIS did not respond to that request. Although there was testimony at trial that the lack of the sign caused Vail Run Realty to lose two customers to other businesses because those customers could not find Vail Run Realty, the trial court concluded that there was no proof by a preponderance of the evidence as to the extent of any monetary loss caused by CIS's breach of contract in removing VRR's sign. Thus, the trial court awarded nominal damages of $100.

Insofar as VRR's counterclaim for the real estate commission, the trial court found that there was an agreement between CIS and VRR regarding time share estates, and that the agreement was for commissions in the amount of $5,300. The trial court made no other findings regarding the substance of that agreement.

Specifically, defendant Hager testified that the weeks in question were originally owned by a person named Johnson; that CIS bought the weeks back from Johnson at an agreed upon price; and that it was agreed between a representative of CIS and Hager that Hager would attempt to sell the weeks. Hager further testified that there was no writing which revealed the terms of the contractual arrangement and that "[t]here was no commission agreed." However, Hager testified that what CIS and VRR "substantially agreed on" was that, when all five units were sold, CIS would leave Hager with the proceeds of the last sale, which proceeds would amount to $5,300 on a $39,000-plus sale.

Hager obtained full down payments for sales of the time share weeks, and, in one case, received a full cash check in a broker's escrow account, but he had no opportunity to complete the sales. Hager did not send a copy of the time share sale contracts to CIS and, in response to direct examination on this issue, responded:

"Are you kidding? Give a guy a contract before he agreed to give you a commission? You've got to be crazy."

## I.

CIS first contends that it did not breach the lease with VRR by removing VRR's sign; and that, even if a breach did occur, nominal damages, by definition, should amount to no more than $1. VRR contends, in contrast, that the court erred in awarding *only* $100 in nominal damages because it produced evidence at trial that it incurred loss of income damages in the amount of $4,000.

■ Our review of the record reveals support for a finding that CIS did breach the lease with regard to causing removal of the sign and not permitting its reinstallation. Hence, this finding is binding on appeal. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

Furthermore, the trial court's finding that the proof was insufficient to establish, by a preponderance of the evidence, damages for VRR must be upheld on review because "the trial judge's presence during the presentation of testimonial evidence provides an unparalleled opportunity to determine the credibility of the witnesses and the weight to be afforded the evidence which is before the court." *Page v. Clark, supra.*

■ However, as to the amount of damages awarded, where, as here, the evidence has been found insufficient to support an award of compensatory damages, the damages awarded must be "nominal." *Doyle v. McBee*, 161 Colo. 130, 420 P.2d 247 (1966). "Nominal damages is a trivial sum such as one cent or one dollar awarded to a [party] whose legal right has been invaded but who has failed to prove any compensatory damages." *Gould v. Mountain States Telephone & Telegraph Co.*, 6 Utah 2d 187, 309 P.2d 802 (1957). We agree with *Colo. J.I.* 30:35 (2d ed.1980) that:

"If you find in favor of the plaintiff, but do not find any actual damages, you shall nonetheless award him nominal

damages *in the sum of one dollar.*" (emphasis added)

We therefore hold that one dollar is nominal damages, as a matter of law. Hence, on remand, the trial court is instructed to modify the award of nominal damages to the "trivial sum" of one dollar.

## II.

■ CIS next contends that VRR did not produce purchasers to complete the purchase for time-sharing units 32, 33, 51, 52 and 1; that the sale of those units was not defeated by CIS's refusal or neglect to consummate the sale as agreed upon; and thus, that the trial court erred in finding that VRR is entitled to a $5,300 commission. We disagree.

CIS also apparently does not contend that VRR failed to submit offers for weeks 32 and 33 to CIS, which offers substantially met CIS's terms. Rather, CIS merely asserts that no contracts were presented and there was no full cash offer for weeks 51, 52, and 1 and that, therefore, VRR did not satisfy its burden of producing ready, willing, and able purchasers as regards those three time-sharing units.

We held in *McGill Corp. v. Werner*, 631 P.2d 1178 (Colo.App.1981) that:

"To be considered an 'able' purchaser, one seeking to purchase real property need not have cash in hand equivalent to the entire purchase price at the time the offer is made .... Nor need the precise source of the offeror's anticipated funds for purchase be identified .... Rather, the offeror must be shown to have had the financial ability to complete the purchase within the time permitted by the offer."

■ Here, there was testimony that VRR had signed contracts and full down payments for the weeks in question and that VRR notified CIS both on the telephone and in writing that VRR was ready to submit the contracts to CIS for their signatures. Although VRR did not submit those contracts to CIS, we find no Colorado law which makes submission of executed contracts to the seller a prerequisite to a

broker's entitlement to a commission, so long as the offers were effectively communicated to the seller. *Cf. Wallick v. Eaton,* 110 Colo. 358, 134 P.2d 727 (1943); *Buckingham v. Harris,* 10 Colo. 455, 15 P. 817 (1886). The trial court's finding that CIS failed "to proceed with the agreement regarding the time share estates in condominium unit #221 of the Vail Run Resort Community and that said commission should be in the amount of $5,300" is not without support in the record and, thus, it is binding on review. *Page v. Clark, supra.*

■ A broker is entitled to his commission if he produces a ready, willing, and able purchaser, even if the vendor, prior to the execution of a valid contract for purchase, refuses to consummate the transaction and the deal fails because of such refusal. *Gerbaz v. Hulsey,* 132 Colo. 359, 288 P.2d 357 (1955); *see also* § 12–61–201, C.R.S. (1978 Repl.Vol.5).

### III.

■ Before examining the two contentions of error raised on appeal by VRR, we address CIS's argument that VRR's cross-appeal must be dismissed because of VRR's alleged "failure to file proper undertakings." We disagree with CIS's argument and conclude, instead, that we have jurisdiction to determine VRR's cross-appeal.

The filing of undertakings in order to secure appellate review of judgments rendered by district courts in forcible entry and detainer cases is governed by § 13–40–120, C.R.S. That statute requires that two undertakings be filed, one meeting the requirements of § 13–40–117, C.R.S., and the second, "additional" undertaking meeting the requirements set forth in § 13–40–120, C.R.S., itself.

On January 8, 1981, pursuant to court order, VRR filed an undertaking in the amount of $702.98, which amount is equal to one month's rental for the premises which are the subject matter of the action herein. This undertaking states its purpose, almost word for word, as being that which is set forth in § 13–40–117, C.R.S.: "To pay all costs which have been accrued, or may thereafter accrue and all damages which plaintiff may have sustained or may thereafter sustain in consequence of the wrongful detention of the premises in question during the pendency of such appeal."

Additionally, on June 25, 1981, pursuant to a motion by CIS and a court order, VRR filed a second undertaking in the amount of $4,000, which amount is equal to the difference between VRR's rental and the rental fair market value over the assumed appeal period for the premises which are the subject matter of the action herein. The second undertaking states its purpose as including the statutory purpose under § 13–40–120, C.R.S., of securing payment to the plaintiff of "all sums as may be awarded" for the "use and occupation of the premises, pending completion of appeals ...."

■ Both undertakings correctly state that they were filed pursuant to § 13–40–120, C.R.S. Furthermore, these undertakings were filed pursuant to court order and their amounts and the sureties given thereunder were approved by the district court. We therefore conclude that the statutory requirements of § 13–40–117, C.R.S., and § 13–40–120, C.R.S., have been adequately met. CIS's contention that each and every defendant appealing the judgment in a particular case must file a separate bond and a separate set of undertakings is without merit.

### IV.

■ VRR's first contention on cross-appeal is that the trial court erred in granting a judgment of possession of the leased premises to CIS solely on the basis that VRR's exercise of the option to renew the lease did not comply with the terms of the written lease, even though VRR's exercise of the option *may* have complied with the lease agreement as allegedly orally modified. We agree.

■ Despite a provision requiring that all modifications of a written contract

must be in writing, the contract may be modified by oral agreement between the parties. *See Cordillera Corp. v. Heard,* 41 Colo.App. 537, 592 P.2d 12 (1978), *aff'd,* 200 Colo. 72, 612 P.2d 92 (1980). Moreover, modifications extending the time during which the performance of a condition is to occur do not require additional consideration in order to be binding. *See Tallman v. Smith,* 112 Colo. 217, 148 P.2d 581 (1944); *Rocky Mountain Plastics Corp. v. Seder Plastics Corp.,* 488 P.2d 99 (Colo. App.1971) (not selected for official publication).

Although the trial court here found that "there was some uncontroverted testimony" to support the position that CIS and VRR had orally agreed to permit notice of extension to renew the lease up to "just prior to the expiration of the base term," the court made no specific finding regarding whether the terms of the written lease had in fact been modified. Under these circumstances, a finding by the trial court that VRR did not timely exercise its option under the written lease is inadequate to determine whether the option was effectively exercised. Accordingly, we remand this issue to the trial court for a determination of: (1) whether the written lease was in fact orally modified, and (2) if there was such modification, whether VRR's notices of intent orally on December 13, 1978, and in writing on March 2, 1979, to extend the term of the lease were in accordance with that modification.

CIS's argument that the statute of frauds precludes enforcement of any subsequent oral modification is meritless because the lease itself was in writing and the only modification of that lease which is claimed is the extension of time period during which the option to renew could be exercised. Such a topic of modification is not within the statute of frauds. *See* § 38–10–108, C.R.S. (1982 Repl.Vol.16A).

Moreover, contracts for the sale of land can be modified by subsequent oral agreement if a party consents to or re-quests a postponement of performance by the other party which is for the requesting party's benefit and the other party has acted on such request or consent. And this is so even though performance of the stipulation at the time specified may have been of the essence of the contract. *Urton & Co. v. Poznik,* 181 Colo. 15, 506 P.2d 741 (1973).

The parties' remaining contentions of error are without merit.

The trial court's finding of plaintiff's breach of the lease by withholding consent to post a sign on condominium unit 7–E and its award to defendants of $5,300 in commissions is affirmed. The court's award of $100 as "nominal damages" for the above breach of the lease on unit 7–E is modified by reducing the amount to one dollar; and the portion of the judgment awarding possession of unit 7–E to CIS is reversed and the cause is remanded for the entry of more detailed findings and conclusions on this issue, consistent with this opinion, and for entry of judgment in accordance therewith.

KELLY, J., and HODGES, Justice*, concur.