**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ELIZABETH MOLLINGER-
WILSON; ROBERT E. WILSON, Lt.
Colonel, USMC-Ret.,

        Plaintiffs-Appellants,

v.

QUIZNO'S FRANCHISE COMPANY,

        Defendant-Appellee.

No. 04-1131
(D.C. No. 02-N-436 (OES))
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **LUCERO** , **McKAY** , and **PORFILIO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Pro se plaintiffs Elizabeth Mollinger-Wilson and her husband Robert E. Wilson appeal the decision of the district court to grant them partial summary judgment and nominal damages in their breach of contract claim against defendant Quizno's Franchise Company (Quizno's). In the district court, plaintiffs had moved for summary judgment, and defendant had filed a cross-motion for summary judgment on damages. Plaintiffs' motion was granted in part and denied in part; defendant's motion was granted. Additionally, plaintiffs appeal the district court's decision in the same document to deny their motion to compel discovery and to deny them leave to amend their complaint five months after they had filed for summary judgment.

The federal district court heard this case under diversity jurisdiction, 28 U.S.C. § 1332(a)(1), and plaintiffs' breach of contract claim was controlled by Colorado law. We exercise jurisdiction over the final order of the district court pursuant to 28 U.S.C. § 1291, and we affirm all of the decision but how the district court calculated nominal damages under Colorado law.

*Background*

Because the critical issue in this case was plaintiffs' lack of proof on damages, we need describe the extensive factual background of the case only briefly. Plaintiffs represented Quizno's in specific parts of the Rocky Mountain region. In January 2000, Quizno's terminated its contract with the plaintiffs. Plaintiffs brought suit against Quizno's, and as part of that settlement, Quizno's agreed that

> As consideration for [plaintiffs] relinquishing [their] rights . . ., [Quizno's] shall pay [plaintiffs] the amount of $57,859, payable within three (3) business days from the date the [Termination] Agreement is fully executed by the Parties, plus one (1) franchise agreement, substantially equal to [Quizno's] present form franchise agreement and valid for 40 months from the effective date of the [Termination] Agreement, which the [plaintiffs] may use in the Territory or which the [plaintiffs] may sell to a third-party, subject to Quizno's approval of the third-party as a qualified Quizno's franchisee . . . . The Parties hereby agree that payment of the Termination Fee constitutes payment in full of any amounts owed to [plaintiffs] by [Quizno's] in connection with the Territory.

R. Vol. I, Doc. 1, Ex. 1 at 1 [hereinafter Termination Agreement]. The parties signed the Termination Agreement on February 28, 2000.

Although Quizno's paid plaintiffs the sum that they were owed within three days, plaintiffs requested delivery of the promised franchise agreement on March 15, 2000, and Quizno's did not deliver that agreement until January 5, 2001. Plaintiffs subsequently brought this suit for breach of the Termination Agreement. Plaintiffs argue that, under the wording of the contract, they were

due delivery of the franchise agreement within three days of when the Termination Agreement was signed, or, in the alternative, within a reasonable time afterwards. Quizno's disputes plaintiffs' interpretation of the Termination Agreement, asserting that the three-day period applied only to the delivery of the money, and not to the delivery of the franchise agreement. In the alternative, Quizno's asserts that it complied with the Termination Agreement by delivering the "substantially equal" franchise agreement within a reasonable period of time. *See id.*

The district court referred the case to a magistrate judge under 28 U.S.C. § 636(b)(1)(B). The magistrate judge found that, under a plain reading of the Termination Agreement, the three-day requirement for delivery applied only to the sum Quizno's was to pay plaintiffs, and not to the franchise agreement. The Termination Agreement was thus ambiguous about when the franchise agreement was to be delivered, and Colorado law implied that Quizno's had a "reasonable time" to perform. R. Vol. III, Doc. 119 at 7 (citing *Colo-Tex Leasing, Inc. v. Neitzert*, 746 P.2d 972, 975 (Colo. Ct. App. 1987)). Because the franchise agreement was to be valid for forty months after the date of the Termination Agreement, the magistrate judge concluded that it was unreasonable for Quizno's to have delayed eleven months to deliver the agreement.

-4-

Although the magistrate judge determined that there had been a breach of contract, he found that plaintiffs had not produced sufficient evidence of damages as a result of a breach. Plaintiffs made several arguments to establish damages, and the following they reassert, *inter alia*, on appeal. [1] We describe those claims here and adopt by incorporation the magistrate judge's accurate responses to them. First, plaintiffs claimed that they had to forego other business opportunities to work with Quizno's. They submitted declining income tax returns from 1995 through 2000 to illustrate their losses. But, as the magistrate judge found, nothing in the record tied plaintiffs' declining income to Quizno's failure timely to deliver the franchise agreement after February 28, 2000. Second, plaintiffs claimed that they had lost profits that should be generally based on the average unit volume for the operation of Quizno's restaurants. But lost profit

---

[1] Plaintiffs appear not to have repeated their arguments on appeal that they incurred damages from the taxes they paid on the sum conveyed in the Termination Agreement, and that they lost additional revenue in developing their territory for Quizno's under their original agreement with the company. *See generally* Aplt. Br. The magistrate judge explained in his report and recommendation that taxes paid on settlements do not naturally follow from the breach of settlement contracts under the law, R. Vol. III, Doc. 119 at 14 (citing *Western Union Telegraph Co. v. Trinidad Bean & Elevator Co.*, 267 P. 1068, 1069 (Colo. 1928)), and that the language of the Termination Agreement had specifically provided that neither party could have "any further obligation or duties, however characterized or described, with respect to each other for obligations related to the Territory, except as set forth in this [Termination] Agreement." R. Vol. III, Doc. 119 at 14 (quoting the Termination Agreement); *see also* Termination Agreement, R. Vol. I, Doc. 1, Ex. 1 at 1.

awards are not permitted under Colorado law if "either the amount of the profits that would have been earned or the fact that the plaintiff would have earned them is too speculative to determine." R. Vol. III, Doc. 119 at 18 (quoting *Republic Nat'l Life Ins. Co. v. Red Lion Homes, Inc.*, 704 F.2d 484, 489 (10th Cir. 1983)). And, as the magistrate judge explained, lost profits from a business that was contemplated but never established would be particularly remote and speculative. *Id.* (citing *King v. United States*, 292 F. Supp. 767, 776 (D. Colo. 1968)). Third, plaintiffs argued that they lost the franchise agreement itself as an investment valued between $250,000 to $350,000, but set forth no factual basis for this evaluation of its value.

Accordingly, the magistrate judge recommended awarding partial summary judgment to plaintiffs, but granting them only nominal damages. He noted that, as part of the record, plaintiffs had been willing to sell the franchise agreement to a third party for $15,000. The magistrate judge therefore recommended that the calculation of nominal damages be interest on the $15,000 from the time that plaintiffs requested the franchise agreement from Quizno's on March 15, 2000, to when Quizno's delivered the agreement on January 5, 2001. The district court adopted the magistrate judge's report and recommendation, and it entered judgment for $969.86, which represented the legal rate of interest on $15,000 for that period of time.

Additionally, the district court denied plaintiffs' motion to compel discovery and leave to amend their complaint. Regarding plaintiffs' motion to compel, the district court held that plaintiffs' request to take additional depositions was untimely because the deadline for discovery had expired, that plaintiffs had not employed previous opportunities to take depositions, and that plaintiffs had presented inadequate proof that additional depositions were necessary. Regarding plaintiffs' motion for leave to amend their complaint, the district court found that plaintiffs had failed to show good cause for amendment, that plaintiffs' proposed amendment had failed to conform to the evidence presented as they asserted, and that there would be significant prejudice to defendant in permitting amendment at the eleventh hour.

*Standard of Review*

We review a district court's decision regarding summary judgment *de novo*, applying the same standard as the district court. *Hollingsworth v. Hill*, 110 F.3d 733, 737 (10th Cir. 1997). We view the evidence and any inferences therefrom in the light most favorable to the non-moving party, *J.B. v. Washington County*, 127 F.3d 919, 923 (10th Cir. 1997); and we will affirm a grant of summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law," *id.* (quoting Fed. R. Civ. P. 56(c)).

We review decisions regarding leave to amend pleadings for abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999). And we have generally held that decisions regarding discovery are within the sound discretion of the district court. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995) (evaluating motion to compel); *GWN Petroleum Corp. v. OK-Tex Oil & Gas, Inc.*, 998 F.2d 853, 858 (10th Cir. 1993) (articulating the general standard).

*Discussion*

On appeal, plaintiffs argue (1) that "common sense" suggests that their damages from the late delivery of the franchise agreement exceed the district court's award of $969.86; (2) that the franchise agreement should have been delivered within three days of when they signed the Termination Agreement; (3) that the franchise agreement that they received was not, as the Termination Agreement required, "substantially equal" to Quizno's form franchise agreement at the time the Termination Agreement was signed; (4) that they should not bear the burden of proving their own damages even with the arguments they had asserted; (5) that they should be entitled to trial on the issue of damages; (6) that

the magistrate judge and district court improperly calculated nominal damages by looking beyond the four corners of the Termination Agreement to find evidence that plaintiffs were willing to sell their franchise to a third party for $15,000; and (7) that the district court should have granted their motions to compel additional discovery from Quizno's and to amend their complaint because they were pro se litigants.

Although plaintiffs are pro se and we construe their pleadings liberally, *Hunt v. Uphoff*, 199 F.3d 1220, 1223 (10th Cir. 1999), we will not construct legal theories on their behalf, *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). We thus do not develop plaintiffs' first objection that "common sense" suggests that their damages exceeded the amount awarded by the district court.

Plaintiffs' second objection is without merit because we hold that the magistrate judge and district court properly read the plain language of the Termination Agreement not to require delivery of the franchise agreement within three days. According to the Termination Agreement, Quizno's owed "[plaintiffs] the amount of $57,859, payable within three (3) business days from the date the [Termination] Agreement is fully executed by the Parties, plus one (1) franchise agreement, substantially equal to [Quizno's] present form franchise agreement and valid for 40 months from the effective date of the [Termination] Agreement

. . . ." R. Vol. I, Doc. 1, Ex. 1 at 1.  The language of the Termination Agreement makes clear that it is "the amount of $57,859" that was to be "payable within three (3) business days."  *Id.*  Delivery of the franchise agreement was promised, but the Termination Agreement did not specify the time frame in which it had to be delivered.

Plaintiffs' third objection is that the franchise agreement they received from Quizno's was not "substantially equal" to the form franchise agreement in effect at the time the parties executed the Termination Agreement.  Plaintiffs' arguments center on whether four changes (different provisions regarding sublease guarantees and advertising cooperatives, the fact that the agreement reflects Quizno's change from a private to a public company, and a transfer fee) are material distinctions from the form of the franchise agreement available at the time the Termination Agreement was signed.  The magistrate judge reviewed each of plaintiffs' arguments to find that the franchise agreement delivered substantially complied with the requirements of the Termination Agreement, and the district court agreed.

The district court, though, focused more on the fact that there had been a breach—and we would add that it matters not whether the breach was the result of the franchise agreement's untimely delivery or of the substantive content of the

-10-

document delivered—and noted that plaintiffs had failed to establish damages. In the words of the district court:

> Although the magistrate judge suggests a finding that defendant breached a promise to furnish a franchise agreement within a reasonable time, plaintiffs are not satisfied. First they repeat their contention that the agreement required defendant to furnish the franchise materials within three days. They also imply that this erroneous interpretation somehow affects the scope of their damages. Second, they argue that the franchise agreement tendered was not [in] the form contemplated by the parties' contract. Third, they insist that they were not required to pay the transfer fee which defendant demanded. This is a matter of looking at the written contracts, which the court has done. The court agrees with the magistrate judge concerning interpretation of the contracts. By operation of law, defendant was obliged to tender a franchise agreement within a reasonable time, and it breached that promise.
>
> In considering the question of damages . . . , [however, plaintiffs are] obliged to establish, by competent proof under applicable legal standards, that there is genuine dispute of material fact which must be resolved at trial . . . . The court has conducted the requisite *de novo* review of plaintiffs' allegations and evidence, their objections, the issues, and the recommendation. Based on this review, I have concluded that the recommendation [of the magistrate judge] is a correct application of the facts and the law. Accordingly, . . . [t]he recommendation is . . . ACCEPTED.

R. Vol. III, Doc. 124 at 6-7. We agree with the district court's focus on the fact that there was a breach and that there should then be an examination of damages. We decline to examine the differences between the versions of franchise agreements available because that discussion would do little to advance resolution of this case, but instead we follow by asking the dispositive question whether plaintiffs have proven damages from any breach of contract.

-11-

Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 . Here, according to the Colorado Supreme Court:

> It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.

*W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted).

Because plaintiffs are the party attempting to recover on a claim for breach of contract, they have the burden to prove the elements of their claim. *See id.* This disposes of plaintiffs' fourth objection that they should not bear the burden of proving their own damages. And, upon de novo review, we hold that plaintiffs have failed to carry their burden to prove that they incurred damages as a result of either the untimely delivery, or arguably the unsubstantially equal content, of the franchise agreement. We have reviewed the record and evaluated all the evidence presented. The magistrate judge and the district court have accurately and thoroughly explained why plaintiffs have failed to establish proof of damages. None of plaintiffs arguments challenge that basic finding, and we incorporate the

magistrate judge and district court's explanations by reference here. Plaintiffs' objection to the form of the contract presented is therefore not relevant; and plaintiffs' fifth objection that summary judgment was not appropriate and that they should have been entitled to go to trial is without merit.

Plaintiffs' sixth objection, that the magistrate judge and the district court improperly calculated the amount of nominal damages by looking beyond the four corners of the Termination Agreement to note evidence in the record that plaintiffs were willing to sell their franchise for $15,000, is interesting because it reopens the issue of how nominal damages should be awarded under Colorado law.

Colorado is specific that nominal damages are $1—not more, not less. The Colorado courts have stated that "one dollar is nominal damages, as a matter of law." *Colo. Inv. Servs., Inc. v. Hager*, 685 P. 2d 1371, 1375 (Colo. Ct. App. 1984) (quotation omitted); *see also id.* ("If you find in favor of the plaintiff, but do not find any actual damages, you shall nonetheless award him nominal damages *in the sum of one dollar*.") (quotation and citation omitted) (emphasis in quotation). And those courts have remanded for a trial court that had awarded more in nominal damages "to modify the award of nominal damages to the trivial sum of one dollar." *See, e.g.*, *id.* (quotation omitted); *accord* 6 *Colo. Prac., Civil Trial Practice* § 12.10 (2d ed.) (West Supp. 2004) ("Where the non-breaching

-13-

party . . . fails to prove the amount of the loss, the non-breaching party may still recover nominal damages . . . [in the amount of] $1.00."); *id.* ("[T]he amount of nominal damages which can be recovered is $1.00.").

We recognize irony in the result that plaintiffs should challenge the calculation of nominal damages as too low, and we remand for the district court to reduce the award to $1. But that is the correct way to have awarded nominal damages under Colorado law, and plaintiffs asked us specifically to examine the issue of how those damages were calculated. Accordingly, we remand for the district court to modify its award of nominal damages to comport with Colorado's requirement that nominal damages be one dollar.

Finally, plaintiffs' seventh objection, that the district court should have granted their motions to compel additional discovery from Quizno's and to amend their complaint because, as pro se litigants, they should be given another chance to comply with judicial requirements, is without merit. "[*P*]*ro se* status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). The district court explained the basis of its decision in its opinion, and plaintiffs do not challenge the court's fundamental reasoning. We hold that the district court did not abuse its discretion in making those decisions.

*Conclusion*

We AFFIRM the judgment of the district court in all respects except for its calculation of nominal damages. On this point, we REVERSE the judgment of the district court, and we REMAND for modification of nominal damages to the amount of one dollar. All other motions are DENIED as moot.

Entered for the Court

John C. Porfilio
Circuit Judge